John R. Mellgren (Or. Bar No. 114620)
(Application for admission *pro hac vice* pending)
Western Environmental Law Center
120 Shelton McMurphey Blvd., Ste. 340
Eugene, OR 97401
Ph: (541) 359-0990
mellgren@westernlaw.org

David A. Bahr (Or. Bar No. 901990)
(Application for admission *pro hac vice* pending)
Bahr Law Offices, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
Ph: (541) 556-6439
davebahr@mindspring.com

Katheryn Bilodeau (Idaho State Bar No. 9002)
Friends of the Clearwater
P.O. Box 9241
Moscow, ID 83843
Ph: (208) 301-8707
katie@friendsoftheclearwater.org

Counsel for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO
## CENTRAL DIVISION

| | |
|---|---|
| **FRIENDS OF THE CLEARWATER,** a non-profit corporation,<br><br>        Plaintiff,<br><br>    *vs.*<br><br>**CHERYL PROBERT,** in her official capacity as Forest Supervisor for the Nez Perce-Clearwater National Forests; **UNITED STATES FOREST SERVICE**, an agency of the U.S. Department of Agriculture,<br><br>        Defendants. | Case No. 3:21-cv-56<br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**Introduction**

1.      Plaintiff Friends of the Clearwater respectfully files this suit challenging the October 2017 Travel Planning Record of Decision ("ROD") for Recommended Wilderness Areas from Defendants Cheryl Probert, Forest Supervisor for the Nez Perce-Clearwater National Forests, and the United States Forest Service (collectively "Forest Service") as unlawful, and otherwise arbitrary and capricious. Further, Friends of the Clearwater challenges the Forest Service's unlawful failure to act in accordance with its travel management duties on the Clearwater National Forest.

2.      The Clearwater National Forest is a jewel of the National Forest System. Its vast mountainous landscapes provide a home to a variety of imperiled species, including bull trout, elk, grizzly bears, lynx, wolverine, and fisher. The Clearwater National Forest contains many lands that qualify for Wilderness designation. In fact, bipartisan support exists to designate many of the lands on the Clearwater as Wilderness. Despite the widespread recognition that these areas should be Congressionally-designated wilderness areas, the 2017 ROD allows continued motorized recreation into the heart of one of these areas.

3.      Indeed, the 2017 ROD allows motorized recreation during summer months along the Fish Lake Trail (Trail 419) on the Clearwater National Forest. The Fish Lake Trail is located within a Recommended Wilderness Area, which otherwise would be an area free of motorized recreation.

4.      The motorized recreation along the Fish Lake Trail not only degrades the wilderness character of these lands, but also creates barriers to wildlife movement, and adversely affects a number of imperiled species.

5.      Friends of the Clearwater brings this lawsuit to ensure that the Clearwater's incredible landscapes continue to support the diverse ecosystems found therein and that their wilderness character is not irreparably degraded.

6.      This is a civil action for declaratory and injunctive relief, arising under the under the laws of the United States, including the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*; Executive Order 11644 (as amended by Executive Order 11989); Forest Service Travel Management regulations, 36 C.F.R. Part 212; the National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1600 *et seq.*; the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*; and implementing regulations established pursuant to these federal statutes and executive orders.

## Jurisdiction and Venue

7.      This Court has jurisdiction under 28 U.S.C. § 1331. Final agency action exists that is subject to judicial review pursuant to 5 U.S.C. § 704. An actual, justiciable controversy exists between Plaintiffs and Defendants. The Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 & 2202 and 5 U.S.C. §§ 705 & 706.

8.      Venue in this court is proper under 28 U.S.C. § 1391 because all or a substantial part of the events or omissions giving rise to the claims herein occurred within this judicial district. Friends of the Clearwater maintains an office within this judicial district. The lead Defendant's office is located within this judicial district. The public lands and resources

affected by this litigation are located within this judicial district. The administrative records at issue in this litigation were prepared, and most remain, within this judicial district.

9.      This case is properly filed in the District of Idaho's Central Division. The Forest Service decision challenged in this litigation was made in Kamiah, Idaho. The Forest Service lands at issue in this litigation are located in Clearwater County, Idaho.

10.     Plaintiffs have exhausted any and all available and required administrative remedies.

**Parties**

11.     Plaintiff Friends of the Clearwater ("FOC") is a non-profit public interest organization dedicated to protecting and preserving the Idaho Clearwater Bioregion's wildlands and biodiversity. Its registered office is located in Moscow, Idaho. FOC has over 800 members, many of whom live and recreate in Idaho. FOC's members include biologists, outfitters, recreationists, and researchers who observe, enjoy, and appreciate Idaho's native wildlife, water quality, and quality of terrestrial habitat as well as the wilderness, roadless, and unroaded character found on the Clearwater National Forest. FOC and its members expect to continue to do so in the future on the Clearwater National Forest. The professional and recreational activities of FOC and its members are directly affected by the ROD and the Forest Service's failure to perform their lawful duty to protect and conserve these ecosystems, and otherwise comply with federal law. The professional and recreational activities of FOC and its members are directly affected by the inactions, failures to act, and actions unreasonably delayed by the Forest Service as described in this Complaint. FOC brings this action on its own behalf and on behalf of its adversely affected members.

12.     FOC's members, staff, and supporters live and recreate in or near the geographic areas covered by the ROD. FOC's members, staff, and supporters use the specific trails and adjacent areas at issue in this complaint, including, but not limited to, the Fish Lake Trail (Trail 419). FOC's members engage in recreational, professional, and scientific activities in these areas, including, but not limited to: hiking, backpacking, camping, fishing, wildlife appreciation and observation (including attempted wildlife observation), nature appreciation and observation, photography, aesthetic enjoyment, spiritual rejuvenation, and quiet enjoyment.

13.     In furtherance of these interests, FOC's members, staff, and supporters have worked, and continue to work, to conserve wildlife, water, and other natural resources of the Clearwater National Forest, including the specific geographic areas at issue in this litigation. These interests will be impaired and harmed by the Forest Service's implementation of the ROD.

14.     The motorized recreation authorized by the ROD diminish the enjoyment of the Clearwater National Forest by FOC members and staff. The degraded conditions of the Clearwater National Forest are detrimental to the group's resource protection and restoration goals, and its members and staff continue to be injured by the mismanagement of the Clearwater National Forest challenged in this action. These injuries would be redressed by the relief sought in this Complaint.

15.     FOC's members, staff, and supporters enjoy observing, attempting and studying wildlife in the wild, including signs of those species' presence in these areas. The opportunity to possibly view species such as elk, bull trout, grizzly bear, Canada lynx, gray wolves, and

other species, or their sign, in these areas is of significant interest and value to FOC, as well as its members, staff, and supporters, and increases the use and enjoyment of these public lands. FOC's members, staff, and supporters have engaged in these activities in the past, and intend to do so again in the near future.

16.     FOC and its members, staff, and supporters have procedural interests in ensuring that all Forest Service activities comply with all applicable federal statutes and regulations. FOC has worked to reform Forest Service activities in Idaho. FOC and its members, staff, and supporters have an interest in preventing the Forest Service from unsupported, uninformed, and unlawful decision-making.

17.     FOC and its members, staff, and supporters have been injured by the Forest Service's actions and inactions challenged in this Complaint. The interests of FOC's members, staff, and supporters have been, and will continue to be, injured by the Forest Service's unlawful approval of the ROD. The interests of Plaintiff's members, staff, and supporters have been, and will continue to be, injured by the Forest Service's failure to comply with NEPA, NFMA, and the Travel Management Rule.

18.     FOC's interests, and those of their members, staff, and supporters, have been, are being, and unless the requested relief is granted, will continue to be harmed by the Forest Service's actions and/or inactions challenged in this complaint. If this Court issues the relief requested, the harm to FOC's interests, and those of their members, staff, and supporters, will be alleviated and/or lessened.

19.     Defendant CHERYL PROBERT is named in her official capacity as the Forest Supervisor for the Nez Perce-Clearwater National Forests. As the Nez Perce-Clearwater

National Forests Supervisor, Ms. Probert is the federal official with responsibility for all Forest Service officials' actions and inactions challenged in this complaint. Ms. Probert signed the ROD at issue in this litigation.

20.      Defendant UNITED STATES FOREST SERVICE is an agency of the United States and is a division of the United States Department of Agriculture. The Forest Service is responsible for implementing NEPA, NFMA, their implementing regulations, Executive Order 11644 as amended, and the Travel Management Rule's regulatory requirements on national forests.

## FACTS

### The Clearwater National Forest

21.      The Clearwater National Forest ("CNF" or "Forest"), is located in north-central Idaho between the Bitterroot Mountains to the east with the Palouse Prairie in the west. Visitors seek out the diverse recreational opportunities of the Clearwater for many purposes such as camping, hiking, skiing, biking, fishing, bird and nature watching, and boating. The Forest contains a total of over 1,827,380 acres of forestlands of diverse topography, soil type, vegetation, and habitat type.

22.      In 2013, the Nez Perce and Clearwater National Forests were administratively combined. The lands at issue in this litigation are referred to as Clearwater National Forest lands.

23.      Over half of the Clearwater — 950,311 acres — has been designated as "inventoried roadless areas" ("IRAs"). IRAs are 5,000 acre or larger blocks of primarily "roadless" lands identified during the Forest Service's Roadless Area Review and Evaluation inventories in

the 1970's.

24.     There are a total of 16 specifically established IRAs on the Clearwater National Forest. The Forest Service has determined that four of them are suitable candidates for prospective Wilderness designation. These four areas are further described as "recommended wilderness areas" ("RWAs"). These four areas were designated as RWAs in 1987.

25.     There are 198,200 acres of RWAs on the Clearwater National Forest: the Mallard Larkins (66,700 acres), the Hoodoo (Great Burn) (113,000 acres), and Selway Bitterroot Additions (4 subunits totaling 18,500 acres). Approximately 319,000 additional acres are to be managed as recommended wilderness (B-2) according to the September 13, 1993, Stipulation of Dismissal agreement between The Wilderness Society *et al.*, and the Forest Service. Additionally, located within the Clearwater National Forest are portions of the Selway-Bitterroot Wilderness Area that consists of 1.3 million acres straddling the Clearwater, Nez Perce, Lolo, and Bitterroot National Forests in Idaho and Montana.

26.     The Forest provides habitat for numerous endangered, threatened, and sensitive wildlife species, species of concern, and management indicator species, including the: Canada lynx; Gray Wolf; Wolverine; Fisher; Fringed Myotis; Townsend's Big-Eared Bat; Bald Eagle; Black-backed woodpecker; Flammulated Owl; Pygmy nuthatch; Harlequin Duck; Coeur d' Alene Salamander; Boreal (Western) Toad; Ringneck Snake; American marten; pileated woodpecker; Northern goshawk; Shiras moose; white-tailed deer; Rocky Mountain elk; Idaho giant salamander; boreal owl; black swift; three-toed woodpecker; pygmy shrew; red-tailed chipmunk; and mountain goat. A variety of sensitive, and rare plant species can

likewise be found within the Clearwater National Forest which provide habitat for 31 plant species designated as "Sensitive" under the Endangered Species Act ("ESA"), 16 U.S.C. § 1531, *et seq.*, and one species listed as Threatened – water howellia. Grizzly bears are also known to occur on the Clearwater National Forest.

27.     Water is a major resource on the Clearwater National Forest. The surface water of Clearwater National Forest is generally of high quality all year round. Numerous streams and lakes provide key features for recreation activities on the Forest.

28.      Unpaved roads on the Clearwater NF are a primary source of erosion and sedimentation as compared to other management activities.

**The Clearwater National Forest Plan**

29.     Management activities on U.S. National Forests are governed by Land and Resource Management Plans ("LRMP"). LRMPs are commonly referred to as forest plans. The Forest Plan includes standards for managing forest resources. The Forest is required to comply with these standards in authorizing projects on the Forest.

30.     The Clearwater National Forest LRMP ("Forest Plan") was finalized in 1987.

31.     The Forest Plan includes recommended wilderness areas. The Forest Plan includes a goal for recreation in Management Area B2 to manage all uses to maintain wilderness qualities and retain semi primitive settings.

32.     One Forest Plan standard for managing wildlife resources is to provide the proper mix of hiding and thermal cover, forage, and protection from harassment during critical periods on the big-game summer range. Big game summer range refers primarily to elk. The

Forest Plan defines big game as those species of large mammals normally managed as a sport hunting resource. The Forest Plan defines big game summer range as land used by big game during the summer months.

33.     The Forest Plan designates elk as an indicator species. Indicator species are those identified in a planning process that are used to monitor the effects of planned management activities on viable populations of wildlife and fish including those that are socially or economically important.

34.     In developing the Forest Plan, the Forest Service acknowledged that motorized road use would have a significant adverse impact on elk habitat. As a result, the Forest Service designated certain areas on the Forest to be managed to preserve and protect potential elk habitat. To accomplish this, the Forest Service established standards requiring 100% elk habitat effectiveness ("EHE").

35.     Among the recommended wilderness areas in the Forest Plan is the Hoodoo (Great Burn) Roadless area. Fish Lake is geographically located within the Hoodoo (Great Burn) Roadless area. The Hoodoo (Great Burn) Roadless area appears in Management Area B2 in the Clearwater National Forest plan. The Forest Plan requires 100% elk habitat effectiveness in Management Area B2.

**Elk on the Clearwater National Forest**

36.     The elk population in Management Area B2 is declining. The elk population in Management Area B2 has declined in the past.

37.     The elk population in the backcountry management areas of Clearwater National Forest has declined. Management Area B2 is a backcountry management area. The elk population in B2 has declined by approximately 87 percent. The population decline began in the early 1990s. The population decline began prior to wolf reintroduction. Because of the 87 percent decline, the status of the elk population falls below the management objectives for the area. The downward trend in the elk population is predicted to continue.

38.     The cause of the elk population decline is unknown. Many factors contribute to the continuing decline. Changes in habitat have contributed to the elk population decline. Climate change has contributed to the elk population decline. Harsh winter conditions have contributed to the elk population decline. Hunting conditions have contributed to the elk population decline. Human encroachment activities have contributed to the elk population decline. Motorized[1] vehicle use in elk habitat has contributed to the elk population decline.

**The 2017 Travel Management Decision**

39.     In 2011, the Forest Service attempted to complete travel planning as required by the 2005 Travel Management rule for the Clearwater National Forest. That 2011 travel plan was challenged in this Court by three sets of plaintiffs, including Friends of the Clearwater. Friends of the Clearwater prevailed, in substantial part, in that challenge to the 2011 travel

---

[1] For the purposes of this Complaint, the phrases "motorized recreational vehicle" and "motorized vehicle" are meant to be expansive and includes off-highway vehicles, all-terrain vehicles, 4x4s, motorbikes, motorcycles, and any other vehicle with any type of engine or motor, including, but not limited to, any engine or motor running on electricity or fossil-fuels.

plan. *See Friends of the Clearwater v. U.S. Forest Serv.*, Case No. 3:13-cv-00515-EJL, 2015 WL

1119593 (D. Idaho March 11, 2015). Consequently, this Court remanded the decisions and

environmental analysis to the Forest Service to rectify the identified legal deficiencies.

40.     In 2017, the Forest Service issued a second ROD for travel planning on the

Clearwater National Forest. That ROD was signed on October 31, 2017 by Defendant

Forest Supervisor Cheryl Probert. The 2017 travel planning ROD was limited to RWAs on

the Clearwater National Forest. The 2017 travel planning ROD was aimed at complying with

a settlement agreement reached in one of the other challenges to the 2011 travel plan. *See*

*Idaho State Snowmobile Ass'n v. U.S. Forest Serv.*, Case No. 3:12-cv-00447-BLW (D. Idaho Feb.

26, 2015).

41.     The 2017 ROD did not address the issues remanded to the Forest Service from the

Friends of the Clearwater litigation over the 2011 travel plan. The Forest Service did not

allow official public comment before issuing the 2017 ROD. The Forest Service did not

conduct updated environmental analysis before issuing the 2017 ROD.

42.     The 2017 ROD selected Alternative C Modified. Alternative C Modified closes many

RWAs to summer motorized vehicle use and over-snow vehicle use. Alternative C Modified

allows some motorized vehicle use in RWAs on the Clearwater National Forest.

43.     The 2017 ROD allows motorized use of the Fish Lake Trail (Trail 419) on the

Clearwater National Forest. The Fish Lake Trail is located in a Recommended Wilderness

Area.

44.      All other trails in Clearwater National Forest Management Area B2 are closed to

motorized use.

***Impacts from Motorized Recreation***

45.     Motorized recreational vehicle use can damage soils.

46.     Motorized recreational vehicle use increases risk of surface erosion potential. Surface erosion is a source of sediment delivery to streams. Motorized recreational vehicle use increases risk of sediment delivery to streams. Motorized recreational vehicle use can cause trail compaction. Motorized recreational vehicle use can cause trail rutting.

47.     Motorized recreational vehicle use can damage vegetation. Motorized recreational vehicle use can trample vegetation. Motorized recreational vehicle use can introduce invasive weeds.

48.     Motorized recreational vehicle use causes more damage to soil than non-motorized use.

49.     Motorized recreational vehicle use causes more damage to vegetation than non-motorized use.

50.     Motorized recreational vehicle use can interfere with non-motorized recreational users of the Clearwater National Forest. This interference can create user conflict.

51.     Motorized recreational vehicle use can adversely impact wildlife. Motorized recreational vehicle use can adversely impact wildlife habitat. Motorized recreational vehicle use can increase the spread of invasive weeds. Motorized recreational vehicle use can degrade water quality. Motorized recreational vehicle use can degrade riparian habitat.

52.     Motorized recreational vehicle use can increase runoff and erosion. Motorized recreational vehicle use can lead to increased amounts of exposed soil. Motorized

recreational vehicle use can lead to increased sedimentation in streams. Motorized recreational vehicle use can lead to increased stream temperatures.

## *Motorized Recreation and Elk*

53.     Elk are significantly influenced by the presence of humans. Elk will abandon preferred habitat when they are disturbed.

54.     Motorized recreation can discourage elk use of an area. Motorized use of an area can lower elk reproductive success. Motorized use of an area may cause loss of elk habitat. Motorized use of an area may cause elk habitat fragmentation.

55.     Allowing motorized recreational use in RWAs reduces the future wilderness potential of these areas.

56.     EHE is reduced by motorized vehicle use. Allowing motorized recreational vehicle use in Management Area B2 reduces EHE in the area.

57.     Motorized recreational vehicle use on the Fish Lake Trail (Trail 419) can cause a reduction in effective habitat for elk as a result of displacement by motorized traffic.

58.     Motorized recreational vehicle use on the Fish Lake Trail can cause the inability to compensate for disturbance on key seasonal ranges used for calving and rearing.

59.     Motorized recreational vehicle use on the Fish Lake Trail can cause higher risk of predation for disturbed, displaced, or harassed elk.

60.     Motorized recreational vehicle use on the Fish Lake Trail has caused elk habitat degradation. Motorized recreational vehicle use on the Fish Lake Trail will continue to cause elk habitat degradation in the future.

61.     Motorized recreational vehicle use on the Fish Lake Trail has caused elk harassment. Motorized recreational vehicle use on the Fish Lake Trail will continue to cause elk harassment in the future.

62.     Motorized recreational vehicle use on the Fish Lake Trail has caused elk displacement. Motorized recreational vehicle use on the Fish Lake Trail will continue to cause elk displacement in the future.

63.     Motorized recreational vehicle use on the Fish Lake Trail has caused increased exposure to predation for elk. Motorized recreational vehicle use on the Fish Lake Trail will continue to cause increased exposure to predation for elk in the future.

64.     In the Fish Lake Elk Management Area, the Forest Service estimates current (at time of analysis) elk habitat effectiveness is 90 percent. The Forest Service estimates that eliminating motorized use of the Fish Lake Trail would raise elk habitat effectiveness to 95 percent. The Forest Service concluded it could not attain 100 percent elk habitat effectiveness in the Fish Lake Elk Management Area. The Forest Service concluded 90 percent elk habitat effectiveness in the Fish Lake Elk Management Area was sufficient to meet the requirements of the Clearwater National Forest Plan.

65.     Elimination of motorized recreational travel along the Fish Lake Trail would allow the Clearwater National Forest to move towards achieving 100 percent elk habitat effectiveness in the area surrounding the Fish Lake Trail.

**Other Impacts from Motorized Recreation**

66.     Motorized recreational vehicle use of the Fish Lake Trail has increased over time.

67.     Prohibiting motorized recreation along the Fish Lake Trail would allow the landscape surrounding Fish Lake to recover, ensure long-term ecological processes remain intact, prevent conflict between recreational users, protect bull trout populations, protect elk populations.

68.     The Stateline Trail intersects the Fish Lake Trail. The Stateline Trail is a nonmotorized trail. User conflict exists between nonmotorized users of the Stateline Trail and motorized users of the Fish Lake Trail. User conflict exists between nonmotorized and motorized users of the Fish Lake Trail.

69.     The Fish Lake Trail crosses streams. The Fish Lake Trail crosses Siam Creek. The Fish Lake Trail crosses Japanese Creek. The Fish Lake Trail crosses at least one unnamed stream. The Fish Lake Trail crosses at least two unnamed streams.

70.     Motorized users of the Fish Lake Trail cross streams with their motorized vehicles as they travel to Fish Lake.

71.     Motorized recreational vehicle use of the Fish Lake Trail has resulted in riparian vegetation trampling along the outlet stream. Motorized recreational vehicle use of the Fish Lake Trail has resulted in riparian vegetation trampling along the lake shore.

72.     Motorized recreational vehicle use of the Fish Lake Trail has resulted in riparian vegetation trampling along the outlet stream. Motorized recreational vehicle use of the Fish Lake Trail has resulted in riparian vegetation trampling along the lake shore.

***Bull Trout and Motorized Recreation***

73.     Bull trout in the Clearwater National Forest are listed as a threatened species under Endangered Species Act.

74.     Fish Lake contains the only naturally adfluvial bull trout population in the North Fork Clearwater River basin. This core area–the area receiving concentrated use by resident bull trout–contains one local population of bull trout.

75.     The bull trout in Fish Lake spawn in the inlet streams.

76.     Bull trout depend on the waters of Fish Lake for survival. Bull trout depend on the Fish Lake watershed for survival.

77.     To survive, bull trout need cold water. Cold water for bull trout means water that rarely exceed 59-64 degrees Fahrenheit. To survive, bull trout need stable stream channels. To survive, bull trout need clean spawning and rearing gravel. To survive, bull trout need complex and diverse cover.

78.     The primary threat identified for the Fish Lake population of bull trout is illegal angler harvest. Motorized access along the Fish Lake Trail increases the number of people accessing this bull trout population. Motorized access along the Fish Lake Trail increases the number of people fishing in Fish Lake and the nearby streams. Motorized access along the Fish Lake Trail increases the amount of illegal bull trout harvest in the area.

79.     Bull trout are adversely affected by motorized recreational vehicle use. Bull trout habitat is adversely affected by motorized recreational vehicle use.

80.     The U.S. Fish and Wildlife Service concluded the travel plan for the Clearwater National Forest was likely to adversely affect bull trout.

81.     By allowing motorized recreational use of the Fish Lake Trail, the ROD adversely impacts bull trout. By allowing motorized recreational use of the Fish Lake Trail, the ROD adversely impacts bull trout habitat.

82.     The Fish Lake bull trout population is in danger of extirpation due to damage from motorized recreational vehicle use along the Fish Lake Trail.

83.     The Fish Lake core area is at high risk of extirpation based on very limited and/or declining bull trout numbers, range, and/or habitat.

84.     The bull trout population in Fish Lake is in danger of extirpation due to the ease of access for motor vehicles to Fish Lake.

85.     Allowing motorized travel on the Fish Lake Trail increases the potential risk of illegal cross-country use in and around Fish Lake and the Fish Lake Trail.

86.     Motorized recreational vehicle use of the Fish Lake Trail has increased fishing pressure in the streams and lake along the Trail. This has resulted in more catch and release of bull trout and associated impacts from hooking mortality.

### *Fishers and Motorized Recreation*

87.     Fishers are small forest carnivores. Fishers occur on the Clearwater National Forest. Fishers are known to occur in the Hoodoo (Great Burn) Roadless Area.

88.     Motorized recreation negatively impacts fishers. Fishers avoid large openings. Fishers avoid areas where motorized vehicles operate.

89.     Allowing motorized travel on the Fish Lake Trail impacts fisher. Allowing motorized travel on the Fish Lake Trail impacts fisher habitat.

90.     Allowing motorized travel on the Fish Lake Trail negatively impacts fisher. Allowing motorized travel on the Fish Lake Trail negatively impacts fisher habitat. Allowing motorized travel on the Fish Lake Trail could cause fisher to avoid the area in and around the Fish Lake Trail.

**Grizzly Bears**

91.     Grizzly bears are known to occur on the Clearwater National Forest. Grizzly bears are known to occur in the Hoodoo (Great Burn) Roadless Area. Grizzly bears are known to occur near the Fish Lake Trail. The Forest Service did not analyze impacts to grizzly bears because it the United States Fish and Wildlife Service does not consider any portion of the project area to be occupied by a breeding population of grizzly bears. No other rationale for omitting an analysis of impacts to grizzly bears was included in the FEIS. No other rationale for omitting an analysis of impacts to grizzly bears was included in the ROD.

92.     In 2019, a grizzly bear known as Bear 927 was present on the Clearwater National Forest.

93.     In 2019, a grizzly bear known as Bear 927 was present in the Hoodoo (Great Burn) Roadless Area.

94.     In 2019, a grizzly bear known as Bear 927 was present in the area near Fish Lake, Idaho.

95.     The U.S. Fish and Wildlife Service considers the Hoodoo (Great Burn) Roadless Area to be an area where grizzly bears may be present. The U.S. Fish and Wildlife Service considers Fish Lake, Idaho, to be an area where grizzly bears may be present.

96.     As of February 2021, the U.S. Fish and Wildlife Service continues to include the Hoodoo (Great Burn) Roadless Area as an area where grizzly bears may be present. As of February 2021, the U.S. Fish and Wildlife Service includes Fish Lake, Idaho, as an area where grizzly bears may be present.

97.     On January 19, 2021, Friends of the Clearwater sent Defendant Cheryl Probert a letter. The letter addressed grizzly bears on the Clearwater National Forest. The letter notified Defendant Probert of the Forest Service's failure to comply with NEPA regarding new information regarding grizzly bears on the Clearwater National Forest.

## FIRST CLAIM FOR RELIEF
## VIOLATIONS OF THE NATIONAL FOREST MANAGEMENT ACT AND ITS IMPLEMENTING REGULATIONS

### INCONSISTENCY WITH CLEARWATER NATIONAL FOREST PLAN

98.     Plaintiff incorporates by reference all preceding paragraphs.

99.     The Clearwater National Forest Travel Planning ROD for Recommended Wilderness Areas violates NFMA because it does not comply with the Clearwater National Forest Plan.

100.    The National Forest Management Act requires the Forest Service to develop and follow Land and Resource Management Plans for each National Forest. 16 U.S.C. §§ 1604(a), (e), & (g)(3)(b). NFMA and its implementing regulations require that all management actions, including specific projects, approved by the Forest Service be consistent with the applicable Forest Plans. 16 U.S.C. § 1604(i); 36 C.F.R. § 219.15.

101.    The Clearwater National Forest Plan requires the Forest Service manage lands in Management Area B2 to achieve 100% elk habitat effectiveness.

102.    Fish Lake is geographically located within the Hoodoo (Great Burn) Roadless area. The Hoodoo (Great Burn) Roadless area is geographically located in Clearwater National Forest Plan Management Area B2.

103.    The Fish Lake Elk Management Area is geographically located within Clearwater National Forest Plan Management Area B2.

104.    The Clearwater National Forest Plan requires the Fish Lake Elk Management Area achieve 100% elk habitat effectiveness. The Fish Lake Elk Management Area has not achieved 100% elk habitat effectiveness.

105.    The Fish Lake Trail is open to motorized use. Motorized use of the Fish Lake Trail reduces elk habitat effectiveness. Motorized use of the Fish Lake Trail reduces elk habitat effectiveness in the Hoodoo (Great Burn) Roadless Area. Motorized use on the Fish Lake Trail reduces elk habitat effectiveness in Management Area B2. Motorized use on the Fish Lake Trail reduces elk habitat effectiveness in the Fish Lake Elk Management Area.

106.    Among the recommended wilderness areas in the Forest Plan is the Hoodoo (Great Burn) Roadless area. Fish Lake is geographically located within the Hoodoo (Great Burn) Roadless area. The Hoodoo (Great Burn) Roadless area is geographically located in Management Area B2 in the Clearwater National Forest plan. The Forest Plan requires 100% elk habitat effectiveness in Management Area B2.

107.    The Forest Service failed to comply with the elk habitat effectiveness standards required by the Clearwater National Forest Plan for Management Area B2.

108.    The Defendants violated NFMA and its implementing regulations by approving a ROD that is inconsistent with the Clearwater National Forest Plan. The ROD is inconsistent

with the Clearwater National Forest Plan standards and guidelines for elk habitat

effectiveness.

109.    The Defendants violated NFMA by making a travel management decision

inconsistent with the Clearwater National Forest Land and Resource Management Plan, and

as a result is arbitrary, capricious, an abuse of discretion, and not in accordance with the law

and procedures required by law. 5 U.S.C. § 706(2)(A).

**SECOND CLAIM FOR RELIEF**
**VIOLATIONS OF THE TRAVEL MANAGEMENT RULE, EXECUTIVE**
**ORDER 11644 AS AMENDED, AND ADMINISTRATIVE PROCEDURE ACT**

**COUNT 1: FAILURE TO CONSIDER AND COMPLY WITH THE TRAVEL**
**MANAGEMENT RULE AND EXECUTIVE ORDER 11644'S MINIMIZATION**
**CRITERIA**

110.    Plaintiff incorporates by reference all preceding paragraphs.

111.    The ROD violates the 2005 Travel Management Rule and Executive Order 11644, as

amended, because it fails to demonstrate implementation of and compliance with the Travel

Management Rule's "minimization criteria."

112.    Executive Order 11644, as amended by Executive Order 11989, obligates the Forest

Service to develop travel management regulations to limit OHV use only to designated trails

for "the protection of the resources of the public lands, promotion of the safety of all users

of those lands, and minimization of conflicts among various uses of those lands."

113.    Executive Order 11644 obligates the Forest Service to promulgate rules requiring it

to locate motorized routes to (1) minimize damage to soil, watershed, vegetation, or other

resources of public lands; (2) minimize harassment of wildlife or significant disruption of

wildlife habitats; and (3) minimize conflicts between off-road vehicle use and other recreational uses.

114.    The Forest Service promulgated the Travel Management Rule in 2005 implementing the requirements of Executive Order 11644 as amended.

115.    The Travel Management Rule states general and specific criteria the Forest Service must consider and apply when designating roads, trails, and areas for motor vehicle use on National Forests with the objective of minimizing damage to forest resources, harassment of wildlife, disruption of wildlife habitat, and conflicts with other recreational uses. 36 C.F.R. § 212.55.

116.    General criteria must be considered and applied for the designation of roads, trails, and areas for motor vehicle use include effects on natural and cultural resources, public safety, provision of recreational opportunities, access needs, conflicts among users of the Forest, and the availability of resources for necessary administration and maintenance. 36 C.F.R. § 212.55(a).

117.    Specific criteria must be considered and applied in designating trails and areas for motor vehicle use, with the objective of minimizing, include damage to soil, watersheds, vegetation, and other forest resources; harassment of wildlife and significant disruption of wildlife habitats; and conflicts between motor vehicle use and existing or proposed recreational uses of the Forest. 36 C.F.R. § 212.55(b). These specific criteria are referred to as the "minimization criteria." The Forest Service must not just consider these minimization criteria, but must affirmatively demonstrate how it evaluated and applied the minimization

criteria in any decision designating trails and areas for motor vehicle use with the objective of minimizing impacts and conflicts.

118.    The ROD must comply with the Travel Management Rule and Executive Order 11644's requirements by demonstrating how it applied the minimization criteria with the objective of minimizing impacts and conflicts on a route-by-route and area-by-area basis. The Forest Service did not consider or apply the minimization criteria in locating motorized trails as part of the ROD. The Forest Service did not consider or apply the minimization criteria in deciding to allow motorized recreational use of the Fish Lake Trail.

119.    The Defendants did not minimize damage to soils, watersheds, vegetation and other natural resources in developing the ROD. The Defendants did not demonstrate that they minimized damage to soils, watersheds, vegetation and other natural resources in the ROD on a route-by-route basis.

120.    The Defendants did not minimize harassment of wildlife and significant disruption of wildlife habitat in the ROD. The Defendants did not demonstrate that they minimized harassment of wildlife and significant disruption of wildlife habitat in the ROD on a route-by-route basis.

121.    The Defendants did not minimize conflicts amongst different types of forest users–including between motorized and non-motorized recreationists–in the ROD. The Defendants did not demonstrate that they minimized conflicts amongst different types of forest users–including between motorized and non-motorized recreationists–in the ROD.

122.    The 2017 ROD does not explain how the location of the Fish Lake Trail minimizes impacts on Forest Resources. The 2017 ROD does not explain how the location of the Fish Lake Trail minimizes user conflicts.

123.    The 2017 ROD does not explain how allowing motorized recreational use of the Fish Lake Trail minimizes impacts on Forest Resources. The 2017 ROD does not explain how allowing motorized recreational use of the Fish Lake Trail minimizes user conflicts.

124.    In finalizing and approving the ROD, the Defendants failed to demonstrate implementation of the "minimization criteria" required by the 2005 Travel Management Rule and Executive Order 11644 as amended, and as a result is arbitrary and capricious, an abuse of discretion, and not in accordance with the law. 36 C.F.R. § 212.55(b); 5 U.S.C. § 706(2)(A).

## COUNT 2: FAILURE TO PREPARE LEGALLY ADEQUATE TRAVEL MANAGEMENT PLAN AND FAILURE TO COMPLY WITH THIS COURT'S MARCH 11, 2015 REMAND ORDER

125.    Plaintiff incorporates by reference all preceding paragraphs.

126.    The 2005 Travel Management Rule, 36 C.F.R. Ch. II, Pt. 212, imposes an obligation on the Forest Service to designate a motorized vehicle route system on National Forest Lands, including the Clearwater National Forest. This motorized route system is designated through a travel management planning process, which must comply with a variety of federal laws, including the Travel Management Rule.

127.    The Defendants have a duty to comply with the Travel Management Rule. The Defendants have a duty to implement a legally adequate travel management plan that

complies with all federal laws. The Defendants have a duty to comply with orders from U.S. District Courts.

128.    On March 11, 2015, this Court concluded the Forest Service had violated federal law in finalizing a travel management plan for the Clearwater National Forest. *Friends of the Clearwater v. U.S. Forest Serv.*, Case No. 3:13-cv-00515-EJL, 2015 WL 1119593 (D. Idaho March 11, 2015). This Court remanded the "Travel Plan, Final Environmental Impact Statement and Record of Decision…to the United States Forest Service for reconsideration and further evaluation consistent with this decision." *Id.* at *18.

129.    Forest Supervisor Cheryl Probert signed a Record of Decision for Travel Planning in Recommended Wilderness Areas on October 31, 2017. The October 2017 ROD noted it "responds to terms of the settlement of the [Idaho State Snowmobile Association/Blueribbon Coalition] ISSA/BRC lawsuit" and "does not specifically address Judge Lodge's order or the issues remanded for further consideration in that case [*Friends of the Clearwater*]." ROD at 5.

130.    The Forest Service has not finalized any travel management decisions responsive to this Court's March 11, 2015 remand order. The Clearwater National Forest does not have a legally adequate travel management plan covering its lands.

131.    Nearly six years have elapsed since this Court's March 11, 2015 remand order in *Friends of the Clearwater*. An almost six-year delay in finalizing a decision constitutes "agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

132.    More than fifteen years have elapsed since the U.S. Department of Agriculture promulgated the travel management rule. A fifteen-year delay in finalizing a decision constitutes "agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

133.    The Defendants' failure to and/or decision to not comply with this Court's March 11, 2015 order in *Friends of the Clearwater* qualifies as "agency action unlawfully withheld or unreasonably delayed" and/or is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 706(1), (2)(A).

## THIRD CLAIM FOR RELIEF
## VIOLATIONS OF THE NATIONAL ENVIRONMENTAL POLICY ACT

### COUNT 1: FAILURE TO TAKE A "HARD LOOK" AT THE DIRECT, INDIRECT, AND CUMULATIVE IMPACTS OF THE ROD

134.    Plaintiff incorporates by reference all preceding paragraphs.

135.    The ROD and accompanying FEIS violate NEPA because they fail to take a hard look at the direct, indirect, and cumulative impacts of the Forest Service's proposed actions.

136.    The regulations implementing NEPA require the Forest Service to disclose and analyze the environmental effects of the proposed action and alternatives to it. 40 C.F.R. § 1500.1(b). Specifically, the regulation explains that "NEPA procedures must insure that environmental information is available to public officials and citizens before decisions are made and before actions are taken. The information must be of high quality. Accurate scientific analysis, expert agency comments, and public scrutiny are essential to implementing NEPA." *Id.*

137.    The Forest Service is required to disclose and analyze the direct, indirect, and cumulative effects of the proposed action on the environment. 40 C.F.R. §§ 1502.16, 1508.7, 1508.8, 1508.25(c)(3), 1508.27(b)(7).

138.    When analyzing cumulative effects, the Forest Service must analyze the effects on the environment resulting from the incremental impacts of the action, and its alternatives, when added to other past, present, and reasonably foreseeable future actions. 40 C.F.R.§ 1508.7.

139.    To satisfy the requirements of the NEPA regulations, the Forest Service must take a "hard look" at the impacts resulting from the proposed action.

140.    The Defendants failed to take the requisite "hard look" at the direct, indirect, and cumulative impacts likely to result from the Travel Planning ROD for Recommended Wilderness Areas.

141.    The Defendants failed to disclose and analyze a number of direct, indirect, and cumulative environmental effects from its proposed action. For example, but not limited to, impacts from implementation of the ROD on grizzly bear (and its habitat), bull trout (and its habitat), and fisher (and its habitat). Specifically, the FEIS and ROD fail to describe how allowing motorized recreation on the Fish Lake Trail impacts grizzly bear (and its habitat), bull trout (and its habitat), and fisher (and its habitat).

142.    The Defendants failed to take the requisite hard look at the direct, indirect, and cumulative effects of implementation of the ROD as required by NEPA, which is arbitrary, capricious, and not in accordance with the APA. 5 U.S.C. § 706(2)(A).

## COUNT 2: FAILURE TO PREPARE NEW OR SUPPLEMENTAL ENVIRONMENTAL ANALYSIS

143.    Plaintiff incorporates by reference all preceding paragraphs.

144.     NEPA requires that the Forest Service supplement its environmental analysis

whenever "[t]here are significant new circumstances or information relevant to

environmental concerns and bearing on the proposed action or its impacts."  40 C.F.R.

§1502.9(c)(1)(ii).

145.     There are significant new circumstances or information relevant to the environmental

impacts of the ROD, including but not limited to the confirmed presence of a male grizzly

bear in or about the geographic proximity of the lands on the Clearwater National Forest

covered by the ROD. A grizzly bear known as Bear 927 and fitted with a tracking collar

traveled in and about the Clearwater National Forest, and other public lands immediately

adjacent to the Clearwater National Forest in 2018. A grizzly bear known as Bear 927 and

fitted with a tracking collar traveled in and about the Clearwater National Forest, and other

public lands immediately adjacent to the Clearwater National Forest, in 2019.

146.     In December 2020, the U.S. Fish and Wildlife Service published a map showing areas

of the northwestern United States where grizzly bears may be present. Clearwater National

Forest Lands are depicted on the map as being areas where grizzly bears may be present.

Lands on the Clearwater National Forest covered by the ROD are depicted on the map as

being areas where grizzly bears may be present. Areas near Fish Lake depicted on the

map as being areas where grizzly bears may be present. Areas near the Fish Lake Trail are

depicted on the map as being areas where grizzly bears may be present.

147.     The travel planning FEIS for the Clearwater National Forest does not contain any

analysis of effects from implementation of the ROD on grizzly bears. The travel planning

FEIS only mentions grizzly bears once: "The USFWS does not consider any portion of the

project area to be occupied by a breeding population of grizzly bears at this time." FEIS at 3-293.

148.    The Forest Service's failure to prepare a new or supplemental analysis of environmental effects as required by NEPA in light of the new circumstances and/or information regarding grizzly bear presence on the Clearwater National Forest is arbitrary, capricious, and not in accordance with NEPA.  5 U.S.C. § 706(2)(A).

## REQUESTS FOR RELIEF

Plaintiffs respectfully request this Court:

1.    Declare Defendants to be in violation of the National Forest Management Act, its implementing regulations, and the Administrative Procedure Act in developing, analyzing, and authorizing the ROD;

2.    Declare the Defendants to be in violation of the 2005 Travel Management Rule, Executive Order 11644 (as amended by Executive Order 11989), and the Administrative Procedure Act in developing, analyzing, and authorizing the ROD;

3.    Declare the Defendants' failure to and/or decision to not comply with this Court's remand order in *Friends of the Clearwater* qualifies as "agency action unlawfully withheld or unreasonably delayed" and/or is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. §§ 706(1), (2)(A);

4.    Declare the Defendants' failure to and/or decision to not comply with the Travel Management Rule (as amended by Executive Order 11989) by finalizing and implementing a legally adequate Travel Management Plan qualifies as agency action unlawfully withheld or unreasonably delayed" and/or is "arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. §§ 706(1),

(2)(A);

5.      Declare the Defendants to be in violation of the National Environmental Policy Act,

its implementing regulations, and the Administrative Procedure Act in developing, analyzing,

and authorizing the ROD;

6.      Vacate the portion of the ROD allowing motorized use of the Fish Lake Trail on the

Clearwater National Forest;

7.      Issue an order remanding this matter to the Forest Service for further analysis and

action consistent with both the law and this Court's March 11, 2015 remand order;

8.      Enjoin the Defendants and their agents from allowing motorized use of the Fish

Lake Trail and any other trails in RWAs, including those areas to be managed as RWAs per

the 1993 Forest Plan Settlement Agreement, with less than 100% elk habitat effectiveness

unless and until the violations of federal law set forth herein have been corrected to the

satisfaction of this Court;

9.      Require the Defendants to submit quarterly status reports to the Court detailing

its progress in complying with this Court's March 11, 2015 remand order and any

subsequent order(s) this Court may issue;

10.     Retain continuing jurisdiction of this matter until the Defendants fully remedy

the violations of law alleged in this complaint;

11.     Award Plaintiff its costs of suit, reasonable litigation expenses, and attorneys' fees;

and

12.     Grant Plaintiff such other and further relief–including preliminary or permanent

injunctive relief–as the Court deems just and equitable.

Respectfully submitted this 4th day of February, 2021.

/s/ Katheryn Bilodeau
Katheryn Bilodeau (Idaho State Bar No. 9002)
Friends of the Clearwater
P.O. Box 9241
Moscow, ID 83843
Ph: (208) 301-8707
katie@friendsoftheclearwater.org

/s/ John R. Mellgren
John R. Mellgren (OR Bar No. 114620)
(Applicant for admission *pro hac vice* pending)
Western Environmental Law Center
120 Shelton McMurphey Blvd., Ste. 340
Eugene, OR 97401
Ph: (541) 359-0990
mellgren@westernlaw.org

David A. Bahr (Or. Bar No. 901990)
(Applicant for admission *pro hac vice* pending)
Bahr Law Offices, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
Ph: (541) 556-6439
davebahr@mindspring.com

*Counsel for Plaintiff*